In the Matter of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the UNION GUARANTEE AND MORTGAGE COMPANY.

UNITED EQUITIES, INC., Appellant; NEW YORK TRUST COMPANY et al., Respondents.

Argued March 14, 1941; decided April 24, 1941.

*Milton B. Ignatius, Lauson H. Stone* and *Joseph S. Catalano* for appellant.

*Adrian D. Stevenson* for New York Trust Company, respondent.

FINCH, J. This is a proceeding for liquidation of the Union Guarantee and Mortgage Company which had guaranteed certificates of participation in a mortgage on 165 Bennett avenue, Manhattan, city of New York. The question presented by this appeal concerns the respective rights arising between the assignee of the interest of the guaranteeing corporation and the owners of the certificates of participation where the owners have consented to a reduced rate of interest in the mortgage as extended, and where the only interest of the guaranteeing company was a certificate issued by the Superintendent of Insurance to the guaranteeing mortgage company evidencing the alleged share of the interest in the mortgage as the difference between the face of the mortgage less the interest represented by the outstanding certificates. No certificates representing this alleged interest of the guaranteeing mort-

gage company in the mortgage have ever been issued to that company in place of the certificates which had been repurchased by the guaranteeing mortgage company, or representing the interest which had never been sold by the company.

The necessary facts, stated briefly, are as follows: The guarantor, Union Guarantee and Mortgage Company, deposited on May 7, 1929, with the Chase National Bank as depositary, a mortgage in the principal amount of $232,500 under a deposit agreement dated November 15, 1927. Certificates registered with the depositary were sold to the public for the full amount of the mortgage less $4,550 representing the unsold share. On November 21, 1928, prior to the sale of any of the certificates to the public, the depositary agreement dated November 15, 1927, was allegedly amended by the guarantor. No reference to this amendatory depositary agreement was included in the certificates. Instead each certificate, when issued, was registered with the depositary and purported to assign: "* * * an undivided share or interest to the extent of said principal sum in the bond and mortgage described on the back of this certificate, and the Company hereby certifies that it has deposited said bond and mortgage together with insurance and title policies and other instruments and evidences of title relating thereto with The Chase National Bank of the City of New York (hereinafter called the Depositary) under the terms of an agreement made between the Company and the Depositary dated *November 15, 1927,* pursuant to which this certificate is issued and to all provisions of which the holder hereof, by acceptance of this certificate, shall be bound." (Italics interpolated.) Subsequently the guarantor repurchased certificates which had been sold to the public, amounting to $46,150. Upon the reacquisition of the certificates the company made numerous perforations through the signatures of the officers of the company and of the officers of the depositary, and made notations in the certificate record books and the records of the company to the effect that the

reacquired certificates were canceled. No new certificates were ever issued to the guarantor, either for the certificates reacquired from the public to the amount of $46,150, or for the $4,550 which represented the unsold share. All reacquisitions of certificates were effected prior to maturity and it is not alleged that they were made to meet or anticipate the maturity of the mortgage or any portion thereof.

On August 2, 1933, the guarantor company was taken over for rehabilitation by the Superintendent of Insurance. In the proceedings instituted for the purpose of reorganizing the rights of the holders of certificates under the provisions of the Shackno Act (L. 1933, ch. 745), the New York Trust Company was appointed trustee of this mortgage by order dated November 6, 1935, and with the approval of the court the trustee entered into an agreement with the mortgagor whereby all unpaid sums due on the mortgage were compromised and the mortgage was extended at a reduced rate of interest. There has been no subsequent default on the mortgage under this extended mortgage. The trustee has collected the interest at the reduced rate and paid over to every certificate holder his full share of the interest, but has retained in its possession the interest applicable to the share totalling $50,700 now owned by United Equities, Inc. On June 15, 1937, the liquidation of the Union Guarantee and Mortgage Company was ordered. Appellant United Equities, Inc., was organized and acquired all assets of the Union Guarantee and Mortgage Company, the realized proceeds of which are to be used for paying the claims of creditors as established in the proceedings for the liquidation of the guarantor. Among these assets so transferred was the single certificate issued by the Superintendent of Insurance as rehabilitator for $50,700 to evidence the interest of the company in this mortgage. In May, 1938, the New York Trust Company, as trustee of the mortgage, asked instructions of the Special Term, praying for an order determining that the share of the guarantor, now owned by appellant United Equities, Inc., was subordinate to that of the certificate holders, and that the court determine the

right of the guarantor to receive the interest on the $50,700. Special Term, after a reargument, held the share of United Equities, Inc., subordinate to that of the certificate holders, and further decreed that the certificate holders should receive interest at the original guaranteed rate of five and one-half per cent instead of the reduced rate of four and one-half per cent until full payment of principal and guaranteed interest had been received by them. The Appellate Division unanimously affirmed. This appeal is by leave granted by this court.

The principles of law applicable to the assignment of a prior interest in a mortgage are found in the decisions of this court. In the event of no debtor-creditor relationship, the shares are on a parity. In *Title Guaranty & Trust Co.* v. *Mortgage Commission* (273 N. Y. 415, 428) we said: " We believe that in this State the courts are committed to the proposition that in the absence of an agreement or proven intent to the contrary, the existence of a trust relationship or proof of some equitable reason why priority should exist in favor of an assignee, the assignor of part of the mortgaged indebtedness who has not assumed a liability as guarantor is entitled to share *pro rata* with his assignee in the proceeds of insufficient security."

Where, however, " * * * a debtor-creditor relationship exists between an assignor of part of a mortgage and the assignee thereof, the assignee's claims must be satisfied before the assignor's." (*Matter of New York Title and Mortgage Co. [Weil]*, 253 App. Div. 308; affd., 278 N. Y. 488.)

This rule was followed in the case of *Pink* v. *Thomas* (282 N. Y. 10). In order to avoid this rule an assignor of a part of a bond and mortgage or other assignable chose in action, may, by the terms of the assignment, fix the right and interests of the assignor and assignee. Thus the rights of the certificate holders to preference may rest not only upon the presumption of intent derived from the guaranty of the assignor, but also may be determined from the actual intent shown by the provisions of the agreement between

the assignor and assignee. (*Matter of Title & Mortgage Guaranty Co. [Pink]*, 275 N. Y. 347.) In the case at bar, the relevant portions of the agreement from which the intention of the parties may be derived consist of the language in the *certificate*, that the guaranty company " * * * shall likewise have the right to retain, out of the proceeds of collection of said bond and mortgage, so much as may remain after paying whatever may be due to the assured of principal and interest on this or other certificates," and of the language in paragraph seventh of the *depositary agreement* of November 15, 1927, which provides: " Seventh: The depositary and the company may, for their own corporate accounts, be the holders or pledgees of a participation certificate or certificates, and, to the extent of such certificates, share in the same manner as other certificate holders."

It is clear from the language used in the above-quoted portion of the certificates that such portion is sufficient evidence of an actual intent on the part of the contracting parties to grant priority to the certificate holders. On the other hand, it is urged by the appellant that the provisions of paragraph seventh of the depositary agreement offset this intent and provide for a parity between the assignor and the assignee in the security. We said in the case of *Pink* v. *Thomas* (*supra*, p. 12) that " it should take very clear and unambiguous language in the certificates to overcome that rule and substitute a holding that in spite of its guarantee of payment it should be permitted to share in the available assets even though the certificates which it had guaranteed should be paid remained unpaid."

Assuming for the purposes of argument, but not deciding, that the above provision contained in paragraph seventh provides for parity between the certificate holders and any share of the company, it is to be noted that the company upon the reacquisition of the certificates, made numerous perforations through the signatures of the officers of the company and of the officers of the depositary, and made notations in the certificate record books and the records of the company to the effect that the reacquired certificates

were canceled. It is apparent, therefore, that the reacquired certificates were canceled and nullified. It is equally clear that no certificate ever existed with respect to the unsold portion of the issue in the sum of $4,550. Since the guarantor has not issued or caused to be issued certificates to itself for either the amount of $4,550 representing the unsold portion of the issue or the amount of $46,150 which was reacquired from the purchasers, the company at the time of the institution of this action had no certificates in its possession which complied with the provisions of paragraph seventh which stipulate that the " company may   *   *   * be the holders or pledgees of a participation certificate or certificates,   *   *   *." Upon this identical set of facts we have held that the failure to issue such certificates subordinates the equity of the company in the security to the claims of the certificate holders. (*Matter of New York Title & Mortgage Co.* [*Series FW-1*], 157 Misc. Rep. 271; affd., 248 App. Div. 715; affd., 272 N. Y. 556.) That decision is controlling in this case.

Thus in the case at bar where the parties have by express terms of the contract limited the right of the company to share on a parity with the certificate holders to a situation where the company has duly issued certificates to itself, the court must give effect to this limitation. It is not an answer to this construction that as a practical matter it makes no difference whether or not such certificates have in fact been issued. It may well have been the intention of the guaranteeing company to obtain advantages by the reduction in the amount of the certificates outstanding under this mortgage. Obviously, the holders of the certificates could by an inspection of the records at the depositary have ascertained that there was only outstanding under this mortgage an amount of certificates substantially less by $50,700 than could have been issued. If the company had duly issued certificates to itself such certificates would have to be registered in the records at the depositary and this information would become available to those who might care to ascertain the facts and set their course in dealing in this security thereby.

The appellant urges that the failure to issue certificates for the amount of the $50,700 interest in the security which the company owned was cured by the provision in the amendatory depositary agreement which was dated November 21, 1928. This contention is without merit since the certificates received by the certificate holders referred only to the original agreement dated November 15, 1927, and did not contain reference to the amendatory agreement even though such amendatory agreement was made and known to the officers of the company before any of the certificates were sold to the public. Inasmuch as this amendatory agreement purported to enlarge the rights of the company and since it was not incorporated into the certificates or brought to the notice of the certificate holders it is in no way binding upon them.

The order of Special Term to the trustee to pay interest to the certificate holders at the guaranteed rate was error. Such direction presumes that the contractual obligation upon the guaranty continues even in the face of an express consent by the certificate holders to an extension of the mortgage at a reduced rate of interest. On the contrary, unless the claimant shall reserve his right or surrender his security to the Superintendent in order to prove his loss, he elects to accept the reduced rate of interest and releases the guarantor from his liability upon the guaranteed rate of interest. By consenting to the extension of the mortgage at the reduced rate of interest, the certificate holders accepted such extension in lieu of their claim against the guarantor for the guaranteed interest. In the absence of any reservation from such action of any right to enforce their original contract of guaranty against the guarantor, such action is clearly a waiver of the guaranty as to the guaranteed rate of interest. Such fact distinguishes this case from the case of *Ticonic Nat. Bank* v. *Sprague* (303 U. S. 406).

It follows that the orders appealed from should be modified in so far as it directed the trustee to pay interest to the certificate holders at the guaranteed rate of interest. It is

affirmed, however, in so far as it adjudged the interest of $50,700 of the company to be subordinate to the interest of the certificate holders.

The orders should be modified in accordance with this opinion and as so modified affirmed, without costs.

LEHMAN, Ch. J., RIPPEY, LEWIS and CONWAY, JJ., concur; LOUGHRAN and DESMOND, JJ., dissent in part in the following memorandum: We do not agree that certificate holders, by consenting to a reorganization plan which included an extension of the term of the mortgage and a reduction in the interest rate, waived their claims against the Guarantee Company on its guaranty, for the difference between the interest, as guaranteed, and the interest, as reduced. There is no waiver of the guarantor's liability unless the reorganization plan specifically so provides (Schackno Act, Laws of 1933, ch. 745, § 7). The order should be affirmed.

Orders modified in accordance with prevailing opinion.