In the Matter of LAWYERS TITLE AND GUARANTY COMPANY. NETACOS CORPORATION, Appellant and Respondent.

LOUIS H. PINK, Superintendent of Insurance of the State of New York, as Liquidator of LAWYERS TITLE AND GUARANTY COMPANY, Appellant.

RECONSTRUCTION FINANCE CORPORATION, Respondent and Appellant.

Argued November 27, 1941; decided January 15, 1942.

*Irving H. Jurow* and *Edward F. Keenan* for Superintendent of Insurance, as liquidator, appellant. The Reconstruction Finance Corporation, as the registered holder and owner of a participating certificate, is entitled to share on an equality and *pro rata* with the Netacos Corporation, in the mortgage underlying the participation series. (*Matter of Title & Mortgage Guaranty Co.*, 275 N. Y. 347; *Pink v. Thomas*, 282 N. Y. 10; *Matter of Lawyers Mortgage Co.* [*545 West End Ave.*], 157 Misc. Rep. 813; 248 App. Div. 715; 272 N. Y. 554; 275 N. Y. 532; *Matter of N. Y. Title & Mortgage Co.* [*Series FW-1*], 157 Misc. Rep. 271; 248 App. Div. 715; 272 N. Y. 556; 275 N. Y. 531; *Matter of Lawyers Title & Guaranty Co.* [*Forshay*], 169 Misc. Rep. 266; 254 App. Div. 653; 279 N. Y. 571; *Matter of People* [*Union Guaranty & Mortgage Co.*], 285 N. Y. 337; *Matter of N. Y. Title & Mortgage Co.* [*Series C-2*], 253 App. Div. 308; 278 N. Y. 488; *Title Guarantee & Trust Co. v. Mortgage Comm.*, 273 N. Y. 415; *Granger v. Crouch*, 86 N. Y. 494; *Matter of Lawyers Mortgage Co.* [*8718 Ridge Blvd.*], 284 N. Y. 371; *Perillo v. Zunino*, 259 N. Y. 21; *Matter of Lawyers Title & Guaranty Co.* [*Chase Nat. Bank*], 165 Misc. Rep. 590.)

*Edward J. Ross* for Netacos Corporation, appellant and respondent. The liquidator is the owner of and has legal title to certificate No. 3. The pledge to the finance corporation is not an assignment within the language of the

certificate, and the pledgee interest of the finance corporation therein is subordinate to certificate No. 1. The Appellate Division erred in so far as it affirmed the order of Special Term. (*Pink* v. *Thomas*, 282 N. Y. 10; *Matter of Lawyers Mortgage Co.* [*8718 Ridge Blvd.*], 284 N. Y. 371; *Matter of Lawyers Title & Guaranty Co.* [*115–25 84th Ave.*], 169 Misc. Rep. 266; 254 App. Div. 653; 279 N. Y. 571; *Matter of Title & Mortgage Guaranty Co.*, 275 N. Y. 347; *Geist* v. *Prudence Realization Corp.*, 122 Fed. Rep. [2d] 503; *Griffey* v. *New York Central Ins. Co.*, 100 N. Y. 417; *Kavanaugh* v. *Cohoes Power & Light Corp.*, 114 Misc. Rep. 590; *Brown* v. *Bronson*, 93 App. Div. 312; *Harding* v. *Eldridge*, 186 Mass. 39; *Douglas* v. *Carpenter*, 17 App. Div. 329; *Keller* v. *Halsey*, 202 N. Y. 588; *Markham* v. *Jaudon*, 41 N. Y. 235; *Maas* v. *Falk*, 70 Hun, 598; 146 N. Y. 34; *Chelten Trust Co.* v. *National Automatic Press Co.*, 216 App. Div. 380.) The company as owner of a subordinate interest could pledge no greater interest than it had. (*Pink* v. *Thomas*, 282 N. Y. 10; *Fairbanks* v. *Sargent*, 117 N. Y. 320; *Lathrop* v. *Title Ins. & Trust Co.*, 73 Cal. App. 147.)

*Effingham Evarts* and *Henry A. Linn* for Reconstruction Finance Corporation, respondent and appellant. The interest of the finance corporation as the holder of certificate No. 3 is co-ordinate and on a par with that of appellant as the holder of certificate No. 1. (*Matter of Lawyers Title & Guarantee Co.* [*5101–5113 13th Ave.*], 156 Misc. Rep. 829; *Matter of Lawyers Title & Guaranty Co.* [*Chase Nat. Bank*], 165 Misc. Rep. 590; *Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69; *Title Guarantee & Trust Co.* v. *Mortgage Comm.*, 273 N. Y. 415; *Matter of Title & Mortgage Guaranty Co.*, 275 N. Y. 347; *Granger* v. *Crouch*, 86 N. Y. 494; *Kelly* v. *Middlesex Title Guaranty & Trust Co.*, 115 N. J. Eq. 592; 116 N. J. Eq. 574; *Land Title Bank & Trust Co.* v. *Schenck*, 335 Penn. St. 419.)

LEWIS, J. The Superintendent of Insurance, as liquidator under article XI (now art. XVI) of the Insurance Law (Cons. Laws, ch. 28), took possession of the property of Lawyers

Title and Guaranty Company on January 21, 1936, upon an adjudication that the company was insolvent. Prior to the liquidation order the company was the owner and holder of a bond and mortgage in the principal amount of $75,000, the lien of which attached to real property in Long Island City. On February 8, 1927, the company had sold the bond and mortgage to Adele Kneeland, as executrix of the estate of Charles Kneeland, for $75,000, and had guaranteed the payment of the principal and interest on the mortgage debt. Upon its maturity the mortgage debt was not paid, the company's guaranty was not fulfilled, and the executrix found by an appraisal of the mortgaged property that its value was not sufficient to warrant a mortgage in the principal amount of $75,000. It was in these circumstances that the company, in an endeavor to readjust the mortgage debt, entered into an agreement whereby the company paid $25,000 on the principal debt and the executrix accepted a guaranteed first mortgage participation certificate for the sum of $50,000. This $50,000 certificate — known in this proceeding as Certificate No. 1 of Mortgage No. " Q " 25088 — was sold and assigned by the Kneeland estate on July 12, 1938, to the present appellant, The Netacos Corporation.

Prior to that date, and on December 29, 1932, the company had issued to Chase National Bank a guaranteed participation certificate in the same mortgage in the amount of $25,000, which certificate is known as Certificate No. 2 of Mortgage No. " Q " 25088. That certificate, however, is of no importance in the present proceeding in view of the fact that it was reacquired by the company and canceled as of February 1, 1933.

On January 26, 1933, the company negotiated a loan of $1,300,000 from Reconstruction Finance Corporation — hereinafter referred to as R. F. C. As collateral security for the repayment of the loan the company pledged with R. F. C. twenty-nine mortgages and mortgage participation certificates, including a guaranteed participation certificate in the mortgage mentioned above in the amount of $25,000.

The certificate last mentioned, known in this proceeding as Certificate No. 3 of Mortgage No. " Q " 25088, was issued in lieu of Certificate No. 2 of the same mortgage. It was registered in the name of Reconstruction Finance Corporation on January 26, 1933, and, except for issuing data not material here, is conceded to be identical in form with Certificate No. 1.

We are thus concerned upon this appeal with only two participation certificates of Mortgage No. " Q " 25088: No. 1, in the amount of $50,000, sold by the company and now owned by the appellant, The Netacos Corporation; and No. 3, in the amount of $25,000, pledged by the company with R. F. C. as one of twenty-nine items which comprised collateral security for a loan of $1,300,000.

When it appeared that the value of the mortgaged property was insufficient to pay on liquidation the face amount of the two certificates, the present proceeding was commenced in which The Netacos Corporation, the present appellant, alleges that its rights represented by Certificate No. 1 are superior in interest to and have priority over rights represented by Certificate No. 3, now pledged by the company with R. F. C. The relief sought is an order adjudging (1) that Certificate No. 1 is entitled to priority over Certificate No. 3; (2) that the interests of the liquidator, as owner of Certificate No. 3, and of R. F. C. as its pledgee, are each subordinate to the interest of The Netacos Corporation in Certificate No. 1; (3) that the liquidator and R. F. C. shall have the right to receive from the liquidation of the property here involved only so much as may remain after paying whatever may be due on principal and interest on Certificate No. 1.

Special Term denied the application of The Netacos Corporation, its ruling being, in effect, that Certificate No. 1 was not entitled to priority over Certificate No. 3. The Appellate Division modified the order of Special Term by providing " that Certificate No. 1 * * * owned and held by The Netacos Corporation * * * has priority and seniority over and is superior to the ownership by

Louis H. Pink, Superintendent of Insurance of the State of New York, as liquidator of Lawyers Title and Guaranty Company, of Certificate No. 3; * * * That the interest in said mortgage of said Superintendent of Insurance, as liquidator, as the owner of said Certificate No. 3, is subordinate and junior to the interest in said mortgage of The Netacos Corporation, as owner and holder of said Certificate No. 1; and * * * That said Superintendent of Insurance, as liquidator, shall have the right to receive out of the proceeds of the income or liquidation of the property here involved, only so much as may remain after paying whatever may be due on principal and interest on said Certificate No. 1." Otherwise the order of Special Term was affirmed.

The parties have treated the Appellate Division order as granting to rights represented by Certificate No. 1 priority over only the liquidator's rights as represented by Certificate No. 3, but not over the rights of R. F. C., as pledgee of Certificate No. 3. In other words, the order is interpreted as providing that The Netacos Corporation and R. F. C. shall share *pro rata* in Certificates Nos. 1 and 3 and prior to the liquidator. The liquidator, The Netacos Corporation and R. F. C. have each appealed. The liquidator seeks to have the order of Special Term reinstated — which would deny any priority to Certificate No. 1. The appellant, The Netacos Corporation, would have this court rule that Certificate No. 1 is entitled to priority over the rights of both the liquidator and R. F. C. as pledgee, which attach to Certificate No. 3. By its appeal R. F. C. would have the order of the Appellate Division affirmed in so far only as it holds that Certificate No. 1 is on parity with Certificate No. 3 to the extent of its interest, but a modification is sought of so much of the order as attributes to the liquidator ownership of Certificate No. 3, now pledged to R. F. C., and provides for the distribution of the proceeds from a liquidation of the properties involved.

Both Certificate No. 1 (originally sold to the Kneeland estate and later acquired by The Netacos Corporation) and Certificate No. 3 (pledged by the company to R. F. C.)

contain a provision assigning to the holder thereof an undivided share in the bond and mortgage No. " Q " 25088 " equal and co-ordinate with all other shares assigned or retained by the Company, the aggregate amount of all such shares, issued and retained, at no one time to exceed the amount then owing on said bond and mortgage." We read the provision in the light of the explanation given in *Pink* v. *Thomas* (282 N. Y. 10, 13): "As we know, these mortgage certificates are sold at different times to different individuals. The words ' equal and co-ordinate with all other shares assigned or retained by the Company ' constitute an agreement that the shares in question shall be equal and co-ordinate with those previously *sold*. That is, that the date of *sale* of different shares shall not in any event constitute a preference, and the shares retained by the company at the date of the sale of any particular share are retained presumably for subsequent *sale*, as that was the business of the company. They shall, *when sold*, be equal and co-ordinate with those in question and all other shares previously *sold* or those still remaining and retained by the company to be thereafter *sold*. All shares taken together, that is, all those sold and all those unsold but retained for future sale, shall not exceed the amount at any time owing on the bond and mortgage." (Emphasis supplied.) (See, also, *Matter of Title & Mortgage Guaranty Co.*, 275 N. Y. 347.)

In the proceeding now before us we believe that, by identical provisions in each certificate, it was intended that the rights represented by Certificate No. 1 should be equal and co-ordinate with all other certificates when *sold* by the company or retained by it *for sale*, and not retained for its own use. Accordingly, in our consideration of the problem presented, we proceed upon the assumption that the company intended fulfillment of its guaranty which attached to all certificates *sold* and guaranteed by it, and that purchasers or their assigns would be paid before the company was paid upon certificates which it retained for its own purposes.

It cannot be doubted that, under the rule of *Pink* v. *Thomas* (*supra*), if, instead of pledging Certificate No. 3, the company had retained that certificate for itself, Certificate No. 1 would be entitled to priority. Nor can there be doubt that if, instead of pledging Certificate No. 3, the company had *sold* that certificate to R. F. C., Certificate No. 1 would share in the security *pro rata* with Certificate No. 3. In the present proceeding, however, Certificate No. 3 was not sold — it was pledged to R. F. C. by the company as collateral to its loan. In that transaction R. F. C., as pledgee, acquired what may be termed a special property in the hypothecated certificate — a " ' possessory right acquired under the bailment.' " (*McCoy* v. *American Express Co.*, 253 N. Y. 477, 482.) But the general property — the legal title to the certificate — remained in the company as pledgor. (*Markham* v. *Jaudon*, 41 N. Y. 235, 240, 241; *Keller* v. *Halsey*, 202 N. Y. 588, 597. Cf. *Griffey* v. *New York Central Ins. Co.*, 100 N. Y. 417, 422; *Harding* v. *Eldridge*, 186 Mass. 39, 42.)

It is argued by The Netacos Corporation that because Certificate No. 3 was pledged to R. F. C. and not sold, it is as if it had not left the possession of the company; and that inasmuch as the company still retains the right to pay its collateral loan and thus to redeem its pledge of Certificate No. 3, the rights represented by that certificate are subordinate to those represented by Certificate No. 1. In that contention we believe The Netacos Corporation is correct.

This proceeding and those involving similar problems call for a determination of the intention of the parties and a consideration of the natural equities involved. (*Matter of Title & Mortgage Guaranty Co.*, *supra*, pp. 354, 355; *Pink* v. *Thomas*, *supra; Matter of People* [ *Union Guarantee & Mortgage Co.*], 285 N. Y. 337, 344.) The fact that we are dealing with a guaranty by the company bears upon those equities. When the company offered to sell participation certificates in the mortgage here involved, it must have been the intention of the seller and the understanding of the buyer that only purchasers who placed themselves in positions

akin to mortgagees would be entitled to the preferential benefits attaching to the guaranteed certificates. The sale of participating interests in mortgages was the business which engaged the company's efforts. Not only the mortgage security but the company's guaranty must have been intended as favorable competitive factors in the mortgage market. It is with that assumption in mind that we read the phrase common to Certificates Nos. 1 and 3 whereby the company assigned an undivided share in the bond and mortgage, "Equal and co-ordinate with all other shares assigned or retained by the Company." Thus read, and with proper regard for the ruling in *Pink* v. *Thomas* (*supra*), the quoted phrase refers to shares *sold* to a *purchaser* of the certificates, viz., to one who, by reason of the acquisition of the rights represented by the certificate became entitled to participate in the mortgage security and any benefits arising from the guaranty *pro rata* with the purchasers of other participation certificates in the same mortgage, or their assignees.

We do not believe that when the company pledged Certificate No. 3 with R. F. C. as collateral to a loan, it granted to R. F. C. as pledgee the same rights as those to which a *purchaser* of other similar certificates was entitled. The company could pledge no rights in the certificate which it could not exercise itself. R. F. C. was lending money to the company upon the company's credit. As a part of the transaction R. F. C. took as collateral security for the loan numerous mortgages and participating certificates, including those rights — and no more — which the company might exercise as owner of Certificate No. 3. The company cannot retain the legal title to the certificate — as it does as a pledgor (*Markham* v. *Jaudon*, *supra*, pp. 240, 241) — and enjoy additional rights or advantages solely by reason of the fact that it has pledged the certificate. In the hands of R. F. C. as pledgee, Certificate No. 3 represents no rights which did not attach to it while it was in the hands of the company. To grant to R. F. C. as pledgee of Certificate No. 3 the same rights as those to which the owner of Certifi-

cate No. 1 is entitled, would allow the company to do indirectly what it cannot do directly. If, under the rule of *Pink* v. *Thomas* (*supra*), the rights of the company under certificates retained for its own use, are relegated to a position subordinate to rights attaching to certificates which have been sold, the company cannot, by pledging an unsold certificate as collateral to a loan, endow such pledged certificate with the same rights as attach to one which has been the subject of a sale.

The order of the Appellate Division should be modified to provide that Certificate No. 1 of mortgage No. " Q " 25088 shall be entitled to priority over the interest of both the liquidator and R. F. C. in Certificate No. 3, and as so modified, affirmed, with costs to the appellant, The Netacos Corporation, against the liquidator and Reconstruction Finance Corporation.

LOUGHRAN, FINCH, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., and RIPPEY, J., dissent.

Ordered accordingly.